UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 09-279-13 |
| | CIVIL ACTION NO. 13-2953 |
| VERSUS | JUDGE ELIZABETH ERNY FOOTE |
| RODNEY D. HARPER | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is a Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255, filed by Defendant Rodney Harper ("Harper"). [Record Document 626]. Harper seeks an order from this Court vacating or reducing his sentence on the grounds of ineffective assistance of counsel and district court error. [*Id.* at 4–7]. For the reasons set forth below, Harper's motion is **DENIED**.

## BACKGROUND

Following a wiretap on a co-defendant's phone, Harper was charged in one count of a nine-count indictment. [Record Document 1 at 2]. Count Two charged Harper with conspiracy to possess with intent to distribute fifty grams or more of a mixture and substance containing a detectable amount of cocaine base (i.e., crack). [*Id.*]. On December 15, 2009, Harper appeared with his appointed counsel, John Nickelson ("Nickelson"), and pleaded guilty to Count Two. [Record Documents 140 and 141]. The written plea agreement recited that Count Two carried a statutory imprisonment range of ten years to life. [Record Document 141 at 2]. By signing this

1

agreement, Harper acknowledged that he faced a mandatory minimum sentence of ten years with the possibility of a life sentence. The stipulated factual basis reflects that a wiretap intercepted Harper negotiating the purchase of over fifty grams of crack from co-defendant Shedrick Green ("Green") on April 13, 2009. [Record Document 141-2 at 1]. The factual basis also represents that Green corroborated this transaction and that a confidential information confirmed Harper's crack dealing. [*Id.*].

Following Harper's guilty plea, he was debriefed by Government agents and admitted to possessing at least eighteen kilograms of crack during the life of the conspiracy. *See United States v. Harper*, 643 F.3d 135, 137 (5th Cir. 2011). The Government then turned this information over to the United States Probation Office, which used this drug quantity to calculate his sentencing range in the presentence report ("PSR"). *Id.* at 137–38. After reviewing the PSR, Harper filed a motion for relief from the Government's breach of plea agreement, asserting that the PSR utilized immunized statements to increase the quantity of drugs attributable to Harper. [Record Document 259]. The sentencing court, Judge S. Maurice Hicks, denied Harper's motion, adopted the PSR, and sentenced Harper to 240 months imprisonment. [Record Document 276]. The Fifth Circuit vacated the judgment because it relied on the immunized statements to establish the drug quantity and remanded the case for resentencing before a different judge. *Harper*, 643 F.3d at 143. Harper's resentencing was assigned to the undersigned. [Record Document 432].

Shortly after remand, Nickelson moved to withdraw as counsel, and Craig Bass ("Bass") was appointed in his place. [Record Document 440 and 442]. Before sentencing, Bass moved

2

for a competency evaluation, fearing Harper was "experiencing a mental crisis." [Record Document 472 at 1]. The Court granted the motion and ordered that Harper be committed to an appropriate Bureau of Prisons facility for examination. [Record Document 473]. Before the competency evaluation was complete, Harper contacted Bass and asked him to withdraw as counsel. [Record Document 512 at 2]. Bass moved to withdraw. [*Id.*].

The Court held a status conference on September 4, 2012, during which the sentencing date was continued to allow additional time to complete the mental health evaluation. [Record Document 517 at 1]. The Court also stated that it would address Bass's motion to withdraw after the competency hearing. [*Id.*]. At the conference, the parties agreed that the issue before the Court at sentencing was the quantity of crack cocaine for which Harper would be held accountable. [*Id.* at 1–2]. To resolve this issue, the Government offered to file a motion under section 5K1.1 of the United States Sentencing Guidelines in which it would recommend a 199-month sentence if Harper (1) waived his objections to the drug quantity; (2) did not require the Government to present testimony from the multiple witnesses it was prepared to call; and (3) agreed not to request any further sentencing reductions. [*Id.*]. If Harper did not accept this offer, the Government represented that it was prepared to offer the testimony of five co-defendants, as well as a Drug Enforcement Administration Special Agent, to establish that the drug quantity was at least eighteen kilograms. [*Id.* at 2].

Dr. Robert Johnson ("Johnson"), the Bureau of Prisons psychologist who examined Harper, found him competent to be sentenced. [Record Document 529-1 at 10]. At the competency hearing, Harper and the Government stipulated to Johnson's findings. [Record

Document 527]. Harper also confessed under oath that he was competent to be resentenced. [*Id.*]. Following a discussion with Harper and Bass outside of the Government's presence, the Court denied the motion to withdraw. [*Id.*]. The Government stated its offer of a section 5K1.1 motion on the record and filed the motion shortly thereafter. [Record Documents 527 and 535].

At sentencing on October 29, 2012, the Court granted the Government's motion. [Record Document 539]. Pursuant to the parties' agreement, no objections were presented or argued to the Court regarding the drug quantity. This Court sentenced Harper to 199 months imprisonment and four years of supervised release. [Record Document 540]. This sentence was below the Guideline range of 235 to 293 months. [Record Document 535 at 2]. Harper did not appeal.

Harper timely filed the instant § 2255 motion on October 28, 2013. [Record Document 626]. In this motion, he asserts three grounds of relief: (1) ineffective assistance of counsel during the pre-plea phase for failure to file requested motions and failure to investigate or present voice identification evidence; (2) ineffective assistance of counsel at the resentencing phase for failure to request appointment of a mental health expert to present mitigation evidence and failure to request funds to hire such an expert; and (3) court error in sentencing him above the statutory minimum. [*Id.*]. The Government responded on December 27, 2013. [Record Document 654].

Harper has also filed a motion to reduce his sentence based on retroactive Amendment 782 to the Sentencing Guidelines. [Record Document 738]. The instant ruling does not address Harper's motion to reduce his sentence, which remains pending.

## LAW AND ANALYSIS

A federal prisoner may challenge the legality of his detention by "mov[ing] the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a) (2012); *see United States v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004) (quoting *Kuhn v. United States*, 432 F.2d 82, 83 (5th Cir. 1970)). Where there has been a "denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). Relief under § 2255 is "reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *Kinder v. Purdy*, 222 F.3d 209, 213 (5th Cir. 2000) (quoting *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992)). A district court may deny a § 2255 motion without conducting any type of evidentiary hearing if the defendant fails to "present[] 'independent indicia of the likely merits of [his] allegations.'" *United States v. Reed*, 719 F.3d 369, 373 (5th Cir. 2013) (quoting *United States v. Cavitt*, 550 F.3d 430, 442 (5th Cir. 2008)). A hearing is also unnecessary if the issues were raised on direct appeal or do not describe constitutional violations. *United States v. McCollom*, 664 F.2d 56, 59 (5th Cir. 1981) (citing *Buckelew v. United States*, 575 F.2d 515 (5th Cir. 1978)).

### Ineffective Assistance for Failing to Hire a Voice Identification Expert

Harper argues that his trial counsel rendered ineffective assistance during the plea negotiation process by failing to obtain the services of a voice identification expert to analyze

the wiretap recording of Harper negotiating to purchase crack from Green. [Record Document 633 at 13–16]. The Government argues that Harper's admission in the factual basis of his guilty plea to the contents of his negotiation with Green as well as the deferential standard applied to ineffective-assistance claims require denying Harper's motion. [Record Document 654-1 at 6–7].

A § 2255 motion is an acceptable vehicle through which to raise initial claims of ineffective assistance of trial or appellate counsel. *Massaro v. United States*, 538 U.S. 500, 503–04 (2003). To successfully state an ineffective-assistance-of-counsel claim, a movant must demonstrate that his attorney's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The movant bears the burden of proof. *See id.* If he fails to establish either prong of the *Strickland* test, then counsel's performance was constitutionally effective. *Id.*

When determining whether counsel's performance was deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks omitted) (citing *Michel*, 350 U.S. at 101). If a tactical decision is "conscious and informed," it "cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Crane v. Johnson*, 178 F.3d 309, 314 (5th Cir. 1999) (quoting *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983)). "Judicial scrutiny of counsel's performance must be highly deferential," and the court must make "every effort . . . to eliminate the distorting

effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

To provide effective assistance, trial counsel must "conduct a reasonable amount of pretrial investigation." *Nealy v. Cabana*, 764 F.2d 1173, 1177 (5th Cir. 1985) (quoting *Martin v. Maggio*, 711 F.2d 1273, 1280 (5th Cir. 1980)). However, to prevail on a habeas claim regarding a failure to conduct an investigation, the movant must "point to . . . specific evidence that would have been uncovered by a more thorough investigation." *Id.* A "failure to investigate can be constitutionally deficient only if it resulted in the exclusion of competent evidence." *United States v. Drones*, 218 F.3d 496, 502 (5th Cir. 2000). Notably, Harper does not affirmatively state that it was not his voice on the wiretap recording. Rather, he argues that "without the identification of Harper's voice, the Government would have had a much more difficult time proving that Harper was part of a conspiracy." [Record Document 633 at 15]. Although Harper's pleading on this point is not entirely clear, he seems to claim that if his attorney had hired a voice expert, the expert would have determined that Harper's voice could not be accurately identified on the recording. [*Id.*]. Harper then alleges that Nickelson's "fail[ure] to make any, let alone reasonable, investigation into the identity of the voice on the wiretap . . . was detrimental to the outcome of Harper's case." [*Id.* at 16].

A "failure to identify an expert whose testimony would have altered the outcome of his trial is fatal to [a] habeas claim." *Earhart v. Johnson*, 132 F.3d 1062, 1068 (5th Cir. 1998) (citing *Ricalday v. Procunier*, 736 F.2d 203, 208 (5th Cir. 1984)). Here, Harper has identified no expert that could have provided the testimony that Harper apparently desired. As such, his claims regarding

what some unidentified expert might have concluded regarding the ability to identify Harper's voice on the recording are "speculative and disfavored . . . as grounds for demonstrating ineffective assistance of counsel." *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002) (citing *Sayre v. Anderson*, 238 F.3d 631, 635–36 (5th Cir. 2001)). In the absence of evidence demonstrating that an expert would have rendered a favorable opinion, Harper has not carried his burden to show that Nickelson's investigation was deficient.

Moreover, the Fifth Circuit has questioned whether expert voice identification satisfies the *Daubert* standard and has suggested that voice identification relying on spectrographic analysis is "of questionable scientific validity." *Drones*, 218 F.3d at 503; *see also Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 589–90 (1993) (requiring a district court to determine the relevance and reliability of expert testimony before admitting it into evidence); *United States v. Ramos*, 71 F. App'x 334, 336 (5th Cir. 2003) (affirming district court's exclusion, under *Daubert*, of a defendant's expert who was to testify that the voice on an inculpatory recording was not that of the defendant). Although the Fifth Circuit has not expressly rejected all voice identification under *Daubert*, that court's hesitation in approving its use reinforces the reasonableness of Nickelson's decision not to retain a voice identification expert.

Moreover, even if Nickelson's failure to investigate was unreasonable, Harper must also show that prejudice resulted. *See Strickland*, 466 U.S. at 687. A showing of prejudice in the context of a guilty plea requires proof that, but for his attorney's errors, the defendant likely would have rejected the plea offer and insisted on proceeding to trial. *Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985). Harper has not clearly explained how the requested expert testimony would

have altered his decision to plead guilty. Although he asserts that the voice-identification expert would have made it more difficult for the Government to prove its case, [Record Document 633 at 15], he ignores the fact that his guilty plea relieved the Government of its burden of proof. Because Harper has neither established that Nickelson's performance was constitutionally deficient nor explained how a voice expert's views would have altered Harper's decision to accept the Government's plea offer, the Court denies Harper's motion as to this claim.

**Ineffective Assistance for Failure to File a Motion for a Bill of Particulars**

Harper contends that Nickelson was ineffective because he failed to file a motion for a bill of particulars. [*Id.* at 14]. Harper claims that Nickelson should have "giv[en] a condition of demand to be provided any and all evidence in possession of the U.S. Assistant Attorney, which may be used in the course of instituting any prosecution against Harper." [*Id.*]. The Government does not respond to this specific claim.

A failure to show either an objectively deficient performance or prejudice is fatal to an ineffective-assistance-of-counsel claim. *Strickland*, 466 U.S. at 687. Harper has not explained what a bill of particulars would have revealed and thus has not carried his burden to demonstrate that, armed with that information, he would have elected to proceed to trial. *See Hill*, 474 U.S. at 58–59. As a result, he has not shown that he was prejudiced by Nickelson's failure to move for a bill of particulars. The Court denies Harper's motion as to this claim.

**Ineffective Assistance for Failing to Retain an Independent Mental Health Expert**

Harper claims that Bass was ineffective at sentencing because he failed to have Harper examined by an independent mental health expert and failed to petition the Court for funds to

do so. [Record Document 633 at 17–20]. The Government responds that Harper has presented no evidence of a mental illness that would have warranted a downward departure. [Record Document 654-1 at 7–10].

The psychologist who examined Harper found that he suffered from depression, but was competent to be sentenced. [Record Document 529-1 at 9–10]. Although Harper represents that this psychologist diagnosed him with schizophrenia and post-traumatic stress disorder ("PTSD"), [Record Document 633 at 19], the actual diagnosis was of major depressive disorder with psychotic features, [Record Document 529-1 at 9]. On the basis of the depression diagnosis, Bass argued for a diminished-capacity downward departure. [Record Document 536 at 12]. Thus, while Bass did not have Harper independently evaluated for purposes of determining his diminished capacity, Bass did use the results of the Bureau of Prison's evaluation to argue for a departure.

A defendant has a right to effective assistance of counsel at sentencing. *See United States v. Fields*, 565 F.3d 290, 293–95 (5th Cir. 2009). As with other ineffective-assistance claims, the defendant must show his attorney's deficient performance and resulting prejudice. *Id.* at 294 (quoting *Strickland*, 466 U.S. at 687). "A decision not to investigate 'must be directly assessed for reasonableness in all the circumstances.'" *Canales v. Stephens*, 765 F.3d 551, 570 (5th Cir. 2014) (quoting *Wiggins v. Smith*, 539 U.S. 510, 533 (2003)). A competency evaluation considers the defendant's mental state at the time of the court proceedings, while a diminished capacity defense requires assessing his mental state at the time of the offense. *Compare Bouchillon v. Collins*, 907 F.2d 589, 592 (5th Cir. 1990) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960))

(defining competence as the "sufficient present ability to consult with [a] lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings") *with United States v. Soliman*, 954 F.2d 1012, 1014 (5th Cir. 1992) (citing *United States v. Ruklick*, 919 F.2d 95 (8th Cir. 1990); *United States v. Speight*, 726 F. Supp. 861 (D.D.C. 1989)) (requiring that diminished capacity for purposes of authorizing a downward departure be a "contributing cause of the offense"). While the legal standards for competence and diminished capacity differ, the factual findings of a competency evaluation may be used to evaluate diminished capacity. *See, e.g., United States v. Christian*, 749 F.3d 806, 811 (9th Cir. 2014). Although Harper alleges that the independent psychologist would have discovered that he suffered from schizophrenia, he has presented no evidence to corroborate this fact. Thus, Harper has not carried his burden to demonstrate that Bass's performance was deficient.

To establish prejudice at sentencing for a federal offense, a defendant must show that but for his attorney's errors, he would have received a shorter sentence. *Grammas*, 376 F.3d at 437–38. Under the Sentencing Guidelines, "[a]downward departure may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense." U.S.S.G. § 5K2.13. "The defendant's significantly reduced mental capacity must be a contributing cause of the offense, but need not be the sole cause." *Soliman*, 954 F.2d at 1014 (citing *Ruklick*, 919 F.2d 95; *Speight*, 726 F. Supp. 861).

Bass argued for a downward departure on the basis of Harper's depression diagnosis. [Record Document 536 at 12]. The Court did not consider this argument because Harper

11

accepted the Government's offer of a below-Guidelines sentence of 199 months in exchange for waiving his right to seek any further reductions in his sentence. [Record Documents 527, 535, 539]. Because Harper waived any right to seek a downward departure for diminished capacity, he cannot have been prejudiced by Bass's failure to procure additional evidence to support that departure.

Even if Harper had not abandoned any diminished capacity claim in order to obtain a below-Guidelines sentence on the Government's section 5K1.1 motion, to demonstrate prejudice Harper must establish a reasonable probability that the Court would have found that Harper's depression and his alleged schizophrenia and PTSD contributed to his commission of the offense to which he pleaded guilty: conspiracy to possess with intent to distribute a controlled substance. In addition to inaccurately representing that the competency evaluator diagnosed with him schizophrenia and PTSD and failing to present any evidence to corroborate his allegation that he has since been diagnosed with these conditions, Harper has not explained how any of these conditions contributed to his drug trafficking offense. In the absence of any connection between Harper's mental illnesses and his offense, a downward departure would have been improper. *See United States v. Ancira*, 83 F.3d 419 (5th Cir. 1996) (unpublished) (finding no ineffective assistance of counsel for failure to seek a downward departure where defendant with post-traumatic stress disorder "fail[ed] to demonstrate how his condition contributed in any way to his commission of the offense of conviction-possession of heroin with intent to distribute"). Thus, even if Bass had had Harper examined independently and that examination had revealed that he suffered from schizophrenia and PTSD, this Court would have been highly

unlikely to have departed downward. As a result, Harper was not prejudiced. Because Harper

has shown neither deficient performance nor prejudice, his motion is denied as to this claim.

### Error in Sentencing Harper Above the Mandatory Minimum

In *Apprendi v. New Jersey*, the Supreme Court found that facts that increase the statutory

maximum penalty must be proven to the jury beyond a reasonable doubt. 530 U.S. 466, 490

(2000). More recently, the Court extended *Apprendi* to hold that facts which impose or increase

a statutory mandatory minimum must also be found by a jury. *Alleyne v. United States*, 570 U.S.

99, 116 (2013). On the basis of these cases, Harper argues that this Court erred by sentencing

him to a term of imprisonment exceeding the mandatory minimum. [Record Document 633 at

20–23]. The Government argues that this claim is procedurally barred and that the Supreme

Court has not held that the right recognized in *Alleyne* is retroactively applicable to cases on

collateral review. [Record Document 654-1 at 10–11].

"A section 2255 movant who fails to raise a constitutional or jurisdictional issue on direct

appeal waives the issue for a collateral attack on his conviction, unless there is cause for the

default and prejudice as a result." *United States v. Kallestad*, 236 F.3d 225, 227 (5th Cir. 2000)

(citing *United States v. Patten*, 40 F.3d 774, 776–77 (5th Cir. 1994) (per curiam); *United States v.

Pierce*, 959 F.2d 1297, 1301 (5th Cir. 1992); *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir.

Unit A 1981)). Although Harper appealed his initial sentence, [Record Document 286], he did

not appeal his resentencing by the undersigned. His claim is thus procedurally defaulted.

To excuse his procedural default, Harper must show cause and prejudice or actual

innocence. *See Dretke v. Haley*, 541 U.S. 386, 393 (2004). Because his motion suggests no reason

13

why he failed to appeal his sentence, he has failed to establish cause for his procedural default. "'[A]ctual innocence . . . means that the person did not commit the crime.'" *Rodriguez v. Johnson*, 104 F.3d 694, 697 (5th Cir. 1997) (quoting *Johnson v. Hargett*, 978 F.2d 855, 859–60 (5th Cir. 1992)). "The burden is on the § 2255 petitioner to show that 'in light of all the evidence it is more likely than not that no reasonable juror would have convicted him.'" *United States v. Scruggs*, 714 F.3d 258, 266 (5th Cir. 2013) (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)). Not only has Harper failed to allege that he did not participate in the drug conspiracy, given the existence of the wiretap recording of Harper's conversation with Green and the availability of witnesses to testify to Harper's involvement, [Record Documents 141-2 at 1 and 517 at 2], the Court finds that Harper has not carried his burden to show that no reasonable juror would have voted to convict. Because Harper has shown neither cause and prejudice nor actual innocence, this Court cannot entertain his claim that he was sentenced in violation of *Apprendi* and *Alleyne*.

Moreover, Harper was resentenced on November 11, 2012, but *Alleyne* was not decided until June 17, 2013. The Fifth Circuit has repeatedly held that *Alleyne* does not apply retroactively to cases on collateral review. *United States v. Olvera*, 775 F.3d 726, 730 (5th Cir. 2015); *In re Kemper*, 735 F.3d 211, 212 (5th Cir. 2013) (per curiam). Hence, the rule stated in *Alleyne* cannot serve as a basis for this Court to grant Harper habeas relief.

Even if Harper could overcome his procedural default and the retroactivity bar, *Alleyne* does not apply to his situation. Harper admits that the mandatory minimum sentence was 120 months. [Record Document 633 at 22].[1] In his factual basis, Harper admitted to conspiring to

---

[1] At the time of Harper's original sentencing, his mandatory minimum sentence was ten years. *See Dorsey v. United States*, 567 U.S. 260, 266 (2012). By the time he was resentenced,

possess fifty grams of crack, [Record Document 141-2 at 1], but in the debriefing following his

plea admitted to purchasing or attempting to purchase more than eighteen kilograms of cocaine

base during the life of the conspiracy, *Harper*, 643 F.3d at 137. These eighteen kilograms

produced a Guideline range of 235 to 293 months. [Record Document 535 at 2].

In his first sentencing, the Court adopted the PSR's findings and sentenced Harper to 240

months on the basis of the eighteen kilograms. [Record Document 279]. The Fifth Circuit held

that the use of Harper's immunized statements as the evidence supporting the relevant conduct

described in the PSR was improper and that resentencing was required. *Harper*, 643 F.3d at 143.

As resentencing approached, Bass indicated that he might object to any sentence based on a drug

quantity greater than the fifty grams of crack discussed in the wiretap recording. [Record

Documents 517 at 1 and 536 at 2]. At the same time, the Government offered to file a section

5K1.1 motion recommending a 199-month sentence in exchange for Harper's willingness to

waive objections to the PSR, thereby obviating the need for the Government to present multiple

witnesses at Harper's sentencing. [Record Documents 517 at 1–2 and 527 at 1]. Harper accepted

this offer, the Government filed the motion, and this Court granted it. [Record Documents 535

and 539].

Harper's resentencing proceedings did not resolve whether Harper's immunized

statements continued to form the basis of the drug quantity reflected in the PSR. It appears that

the Government intended to prove the larger quantity from sources independent of Harper's

immunized statements at the debriefing, although this is not entirely clear from the record.

---

his mandatory minimum was five years pursuant to the Fair Sentencing Act. *See id.* at 269,
273.

[Record Document 517 at 2]. In any event, Harper did not object to the calculated Guideline range.

Harper's sentence is not attributable to any increase in a <u>statutory</u> mandatory minimum, but rather to an application of the Sentencing Guidelines to which he did not object. In *United States v. Tuma*, the Fifth Circuit specifically rejected a defendant's argument that facts which increase the applicable Guideline range fall under *Alleyne*. 738 F.3d 681, 693 (5th Cir. 2013). Thus, the Court finds that Harper is not entitled to relief on his theory that his sentence, which exceeds the mandatory minimum, violates *Alleyne*.

## CONCLUSION

Because Harper has presented no independent evidence demonstrating the likely merits of his claims, the Court may deny his motion without an evidentiary hearing. The Court finds no constitutional infirmity in Harper's conviction, and so his § 2255 motion [Record Document 626] is **DENIED**.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this _____ day of _____, 2018.

_____
ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE